IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LISA BUDNY<br>c/o Sobel, Wade & Mapley, LLC<br>55 Erieview Plaza, #370<br>Cleveland, Ohio 44114<br><br>    Plaintiff,<br><br>vs.<br><br>THE CITY OF BEACHWOOD<br>2700 Richmond Road<br>Beachwood, Ohio 44122<br><br>    Defendant. | CASE NO.:<br><br>JUDGE:<br><br>**COMPLAINT FOR DAMAGES**<br><br>(JURY DEMAND ENDORSED HEREIN) |

  Plaintiff Lisa Budny, by and through undersigned counsel, as her Complaint against Defendant, states and avers the following:

### INTRODUCTORY STATEMENT

1. Lieutenant Lisa Budny has served the City of Beachwood ("Beachwood" or "City") as a police officer for over fifteen years. For the past three and a half years, Budny has been the subject of ongoing retaliation at the hands of Beachwood's erstwhile Chief of Police Gary Haba and the two captains beneath him, Richard Lessick and John Korinek.

2. In March of 2018, following Budny's hysterectomy, Haba addressed Budny in roll call by asking, "Who's the new guy?" Following Budny's use of leave under the Family and Medical Leave Act related to her hysterectomy, Haba informed Budny that in assessing Budny's performance, he had taken into account absences she accrued pursuant to authorized sick leave and the FMLA. Budny

opposed Haba's unlawful consideration of FMLA leave in assessing her performance.

3. In July of 2019, Haba told Budny she looked like a "whore" in a photograph. Just as she had done when Haba retaliated against her for FMLA use, Budny opposed Haba's use of the slur, in response to which Haba defended himself by stating that he had used an alternative pronunciation of the slur, which, to his mind, somehow made it humorous. When Budny escalated her concerns over the slur to human resources, the City determined that Haba should undergo additional anti-discrimination training, which, unfortunately and as evidenced by Haba's continued retaliation, never occurred.

4. Following Budny's complaints about Haba's grotesque behavior, Captain Lessick affixed a toy grenade to his door, with a note attached to the grenade pin stating, "Complaints: Take a Number."

5. In April of 2020, shortly before he retired, Haba created a lengthy entry in the department's Personnel Early Warning System ("PEWS"), detailing Budny's email communications related to her mundane, albeit understandable, frustration concerning the department's handling of a rodent infestation within the building. Haba created the PEWS entry, which is normally reserved for reporting officer behavior that could potentially create an imminent risk to officer and/or public safety, as one parting shot of retaliation on his way out the door. Haba's retaliatory PEWS entry was particularly problematic, as such entries are a matter of public record, are routinely used in making promotional and hiring decisions, and paint the affected officer as being dangerous, erratic, and/or a poor candidate for promotion or hiring. A PEWS entry can irreparably harm the career of the reported officer, and Haba created the entry on Budny for no other reason than that he was angry that she had repeatedly complained when he subjected her to discriminatory and retaliatory conduct.

6. Following Haba's retirement, Captain Lessick picked up where Haba left off. In August 2020, following the death of Budny's mother in a motor vehicle accident, Lessick, the department's then-acting chief, refused to allow Budny more than the contractually mandated minimum of three days of bereavement, despite the fact that the grant of additional days was within his discretion, and despite the fact that male officers with no history of complaining about unlawful discrimination and retaliation had been previously granted such additional bereavement leave.

7. In September of 2020, faced with a City that refused to address ongoing acts of discrimination and retaliation, Budny filed a charge of discrimination with the Equal Employment Opportunity Commission.

8. The day that the City was informed of Budny's EEOC charge, Lessick reaffixed the grenade and "Complaints: Take a Number" note to his door.

9. Following Budny's EEOC charge, the City altered its sick time policy in a manner that clearly, and admittedly, targeted Budny.

10. Following Budny's EEOC charge, the City created a new position, for which Budny was well-qualified, and refused to consider her as a candidate.

## PARTIES AND VENUE

11. Budny is a resident of Leroy Township, county of Lake, and state of Ohio

12. Budny brings this action alleging gender discrimination and retaliation in contravention of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and retaliation in contravention of the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.*

13. At all times material to the allegations made herein, Budny was an employee pursuant to 42 U.S.C. § 2000e(f).

14. At all times material to the allegations made herein, the City of Beachwood was Budny's employer pursuant to 42 U.S.C. § 2000e(b).

15. At all times material to the allegations made herein, Budny was an eligible employee pursuant to 29 U.S.C. § 2611(2).

16. At all times material to the allegations made herein, the City of Beachwood was an employer pursuant to 29 U.S.C. § 2611(4).

17. Jurisdiction is proper over Defendant pursuant to 28 U.S.C. § 1331, in that Budny is alleging federal law claims under Title VII of the Civil Rights Act of 1964 and the Family and Medical Leave Act.

18. Within 300 days of the conduct alleged below, Budny filed a Charge of Discrimination with the Equal Employment Opportunity Commission, specifically, Charge No. 532-2020-02775.

19. On July 7, 2021, Budny received a Right to Sue letter, dismissing Charge No. 532-2020-02775, in accordance with 42 U.S.C. 2000e-5(f)(1).

20. Budny has properly exhausted her administrative remedies.

21. Budny files this Complaint within 90 days of receiving her Right to Sue letter from the EEOC.

22. All material events alleged in this Complaint occurred in Cuyahoga County.

23. Venue is properly placed in the United States District Court for the Northern District of Ohio, Eastern Division, because it is the district court for the district, division, and county within which a substantial part of the events giving rise to the claims alleged in this Complaint occurred.

24. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTUAL ALLEGATIONS

25. On or around February 6, 2006, Beachwood hired Budny as a police officer.

26. In March of 2018, Budny underwent a hysterectomy.

27. In February of 2018, Budny informed Beachwood's then-police chief, Gary Haba, of her impending surgery, to which Haba, in front of Budny's colleagues, replied, "It's always something with you, Budny."

28. Because of her surgery and recovery, Budny made use of leave afforded by the Family and Medical Leave Act ("FMLA").

29. In assessing an officer's worthiness for promotion, one of the metrics the Department utilizes is a discretionary rating system known as "Chief's Points."

30. Following the March 4, 2018 posting of Chief's Points, Budny informed Haba that she would like to discuss her Chief's points.

31. In response to Budny's concerns, Haba informed her that he had taken her attendance into consideration.

32. Budny's only attendance issue was leave taken pursuant to the FMLA.

33. In or around March 2018, Haba told Budny that he doubted she could go three months without utilizing sick time, because she "always [had] something going on."

34. The "something" that Budny "always" had going on was a chronic condition for which she had undergone numerous surgical procedures and for which she had always properly used approved sick leave.

35. In May of 2018, after Budny had returned from FMLA leave, Haba announced during roll call, "Who's the new guy?," insinuating that the removal of her uterus had somehow made Budny less of a woman.

36. In late November of 2018, Haba telephoned Budny and informed her that he and Captain John Korinek had placed a bet with one another concerning whether Budny would be on sick leave again for surgery during 2019.

37. Budny informed Haba that his comments were unprofessional and unwanted, and she asked that he refrain from any further comments about her health

concerns. Budny additionally pointed out to Haba that other officers, including John Korinek, habitually misused sick time.

38. In late July of 2019, in the lunchroom, Haba loudly announced, in the presence of multiple officers, "Hey Budny, I saw a picture of you in a dress."

39. Later the same day, Haba told Sergeant Matthew Page, in front of Budny, "I saw a picture of Budny in a dress and she looked like a whore."

40. The following day, Budny complained to Captain Richard Lessick about Haba's comments.

41. Lessick's initial response to Budny's complaints was to ask her if Haba made the comments in jest.

42. Lessick asked Budny if she wanted to speak to Haba about the issue herself or if she wanted Lessick to do so.

43. Budny informed Lessick that she preferred the latter.

44. Later that same day, Haba called Budny into his office and again brought up the fact that he had seen a photo of her in a dress.

45. When Budny informed Haba that his commentary about her appearance in a dress was inappropriate and unwanted, Haba said he was joking and that he had referred to her as a "whoooore" and not a "whore."

46. In early August of 2019, Budny brought the above concerns to the attention of Dana Canzone, the City's Human Resources Administrator.

47. Per departmental policy, "Any proscribed conduct covered by this policy that comes to the attention of a supervisor shall result in an investigation."

48. Haba's comment was in violation of departmental policy.

49. Upon information and belief Budny's complaint did not result in an investigation.

50. Following Budny's complaints, a closed-door meeting was held between the City's law director, Canzone, Budny, and Haba.

51. Upon information and belief, Beachwood ordered Haba to undergo some additional training concerning workplace discrimination and harassment, which he never completed.
52. Following Budny's complaint, Haba stripped her of duties related to the recruitment of new officers.
53. Following Budny's complaint, Captain Richard Lessick placed a toy grenade on his door with a note attached to the grenade's pin stating, "Complaints: Take a Number."
54. The Department maintains a Personnel Early Warning System ("PEWS").
55. The purpose of PEWS is to identify officers whose conduct causes concern that might warrant intervention. Upon the occurrence of certain specific risk factors, a Department supervisor is to note the event by entering a brief synopsis in the employee's personnel file.
56. On April 17, 2020, Haba created a lengthy PEWS entry in Budny's personnel file, related to what he deemed an "inappropriate" email that she had sent to him and Lessick.
57. The subject of Budny's email was the placement of mouse traps outside of her office.
58. Haba's PEWS entry indicates that he believed Budny's email was inappropriate because, by his reading of the email, she was blaming him and/or Lessick for the placement of the traps in question.
59. Haba also indicated that he believed Budny was upset when he subsequently telephoned her about the email.
60. Haba's entry indicates that he believed Budny's email was disrespectful in its tone.

61. Haba, on each of the two occasions that Budny and he discussed the email on the telephone prior to the PEWS entry, indicated that the situation did not warrant further action.
62. Budny's email, irrespective of its tone, was an appropriate means of communicating to her superiors an issue that was within their bailiwick.
63. During his tenure as Chief, Haba made no other PEWS entries in any other personnel file.
64. A PEWS entry typically indicates behavior that is concerning to the Department and evidence that an officer may need some type of intervention to protect fellow officers and/or the public.
65. A PEWS entry is a public record and is used in internal investigations, promotions, and background investigations by prospective employers.
66. Haba was undoubtedly aware of the detrimental impact such an entry could have on Budny's career prospects.
67. Budny informed Lessick that she believed the PEWS entry was retaliatory in nature for her complaint against Haba for his whore comment.
68. In July 2020 Haba unexpectedly retired.
69. Following Haba's retirement, in August of 2020 the City offered to insert a cover letter into its personnel system, signed by the Mayor, stating: "In my capacity as Mayor of Beachwood and Director of Public Safety, I have reviewed an April 17, 2020 Personnel Early Warning System ("PEWS") entry, made by then-Chief of Police Gary Haba, relative to Lieutenant Lisa Budny. It is clear to me, and in my opinion, I find nothing to warrant the PEWS entry."
70. In August 2020, Budny's mother was killed in a motor vehicle accident.
71. The police union's contract with Beachwood provides that officers are allowed three days of bereavement leave, but that, at the Chief's discretion, additional days may be granted "for exceptional circumstances."

72. The department has routinely provided male officers with additional days beyond the three days of standard bereavement, yet it declined to allow Budny the same, despite the fact that her mother was the victim of a violent crime and everything surrounding her death was, in fact, exceptional.

73. The department provided a male officer with additional bereavement for a step-parent, a relative for which the contract provides no bereavement at all.

74. In September of 2020, Budny filed a charge with the EEOC alleging discrimination and retaliation on the basis of sex.

75. As he had done following Budny's 2019 complaints about Haba, a few days after Beachwood was notified of the filing of Budny's EEOC charge, Lessick, who was by then the acting chief, reaffixed the grenade to his door.

76. In April of 2021 the police department's sick time policy was changed to prohibit officers from coming into work late after calling off sick.

77. Because she suffers from migraines, which sometimes resolve quickly when she senses one coming on and takes a quick acting interventional medication, Budny made use of the former policy, which allowed an officer to call in sick and later return to work on the same day if his/her condition allowed, more frequently than other officers.

78. Upon information and belief, Budny may be the only officer who has called off sick and then come into work later that same day.

79. Upon information and belief, the City specifically targeted Budny with the new sick time policy.

80. Captains Lessick and Korinek informed the police officer's union representative that the change in policy was because of how Budny had used sick time in the past.

81. Budny raised her concerns over the new sick time policy and the union presented it in a labor management meeting with Lessick, Korinek, and Chief Kelly Stillman.
82. Captains Lessik and Korinek were upset when the union made mention of the concern with this section of the policy, claiming if it was changed back "she" could come in whenever she wanted.
83. Budny approached Chief Stillman in May 2021 regarding the sick time policy and requested an accommodation for her migraines.
84. Stillman informed Budny that the Rocky River police department had the same sick time policy.
85. Upon information and belief, the Rocky River police department never had the same sick time policy.
86. On July 12, 2021, Budny called off sick and was not allowed to come in late.
87. On July 13, 2021, Budny informed Stillman that she was planning on filing a grievance for the sick time policy because it violated the contract.
88. The contract provides that officers can take sick time in 15-minute increments. The new sick time policy required that sick time be taken in 12-hour increments.
89. On July 16, 2021, Budny provided a note from her doctor regarding her need for a reasonable accommodation for her disability.
90. Stillman requested that, in lieu of a grievance, Budny rewrite the sick time policy and he would consider changing it.
91. In August of 2021, the City created a new position in the police department, specifically Deputy Chief of Police.
92. Despite the fact that Budny possessed over a decade and a half of relevant experience with the City's police department, the City failed to consider Budny as a candidate for this new position, which would have been an increase in pay and responsibility.

93. The City denied Budny discretionary bereavement leave, forcing her to expend sick time, in retaliation for Budny's previous complaining about unlawful discrimination and retaliation.

94. The City's denial of discretionary bereavement leave to Budny was also disparate treatment pursuant to Title VII, as the City had granted such leave to male officers.

95. The City targeted Budny with the department's new sick time policy in retaliation for Budny's previous complaints about unlawful discrimination and retaliation.

96. The City refused to consider Budny as a candidate for the deputy chief's position because of Budny's history of complaining about unlawful discrimination and retaliation.

97. Lessick's display of the grenade on his door was meant to dissuade employees from making complaints of discrimination and retaliation and was because of Budny's history of complaining about unlawful discrimination and retaliation.

**COUNT I: RETALIATION IN CONTRAVENTION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

98. Budny incorporates by reference the allegations from the preceding paragraphs, as if fully restated herein.

99. Budny repeatedly engaged in activity protected by Title VII of the Civil Rights Act of 1964.

100. Beachwood retaliated against Budny because of Budny's engagement in activity protected by Title VII of the Civil Rights Act of 1964.

101. Beachwood's retaliatory actions towards Budny were in contravention of 42 U.S.C. § 2000e-3(a).

102. As a result of Beachwood's unlawful conduct, Budny has suffered, and will continue to suffer pecuniary damages and psychic injury.

### COUNT II: RETALIATION IN CONTRAVENTION OF THE FAMILY AND MEDICAL LEAVE ACT

103. Budny incorporates by reference the allegations from the preceding paragraphs, as if fully restated herein.

104. Budny repeatedly engaged in conduct protected by the Family and Medical Leave Act, in that she repeatedly complained to Beachwood about conduct proscribed by the Act.

105. Beachwood retaliated against Budny because of Budny's engagement in activity protected by the Family and Medica Leave.

106. Beachwood's retaliatory acts against Budny were in contravention of 29 C.F.R. § 825.220.

107. As a result of Beachwood's unlawful conduct, Budny has suffered, and will continue to suffer pecuniary damages and psychic injury.

### COUNT III: DISCRIMINATION ON THE BASIS OF SEX IN CONTRAVENTION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

108. Budny incorporates by reference the allegations from the preceding paragraphs, as if fully restated herein.

109. Beachwood unlawfully discriminated against Budny in respect to the terms and conditions of her employment, specifically requiring her to utilize sick time to supplement bereavement leave, when it did not make male officers do the same, in contravention of 42 U.S.C. § 2000e-2(a).

110. As a result of Beachwood's unlawful conduct, Budny has suffered, and will continue to suffer pecuniary damages and psychic injury.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Lisa Budny respectfully requests that this Honorable Court grant the following relief:

1. An order requiring Defendant to promote Budny into one of the positions to which she was entitled by virtue of her service and qualifications;

2. An award against Defendants of damages to compensate Budny for back pay, front pay, and other consequential damages, in an amount in excess of $25,000 per claim;

3. An award of liquidated damages in an amount equal to the sum above that is determined to be the result of Budny's FMLA claims;

4. An award of reasonable attorney's fees and costs for Budny's claims as allowable and/or required under law;

5. Any award of other relief that this Court may deem necessary and proper.

Respectfully submitted,

*s/ Peter C. Mapley*
Peter C. Mapley (0092359)
Claire I. Wade-Kilts (0093174)
Sobel, Wade & Mapley, LLC
55 Erieview Plaza, #370
Cleveland, Ohio 44114
T: (216) 223-7213
mapley@swmlawfirm.com
wade@swmlawfirm.com

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff Lisa Budny demands a trial by jury by the maximum number of jurors permitted.

*s/ Peter C. Mapley*
Peter C. Mapley (0092359)

*Attorneys for Plaintiff*